Ronald David ROGERS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–04–01252–CR, 01–04–01253–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 15, 2009.

Robert "Bob" Wicoff, Houston, TX, for Appellant.

John J. Harrity III, Assistant District Attorney, John F. Healey Jr., Fort Bend County District Attorneys Office, Richmond, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

ELSA ALCALA, Justice.

Appellant, Ronald David Rogers, appeals a judgment that convicts him for the second-degree felony offense of aggravated assault with a deadly weapon of Tammy Goldsmith in appellate cause number 01–04–01252–CR, which is trial court cause number 39154A; and a judgment that convicts him for the second-degree felony offense of attempted aggravated sexual assault of Goldsmith in appellate cause number 01–04–01253–CR, which is trial court cause number 39155. *See* Tex. Penal Code Ann. § 15.01 (Vernon 2003), §§ 22.02, 22.021 (Vernon Supp. 2008). Appellant pleaded guilty to both offenses be-

fore a single jury. The jury found true a punishment enhancement paragraph and determined appellant's punishment for aggravated assault at 60 years in prison and a $5,000 fine. The jury determined appellant's punishment for attempted aggravated sexual assault at 15 years in prison and a $5,000 fine.

In three issues pertaining to each of the two appeals, appellant contends (1) the attempted aggravated sexual assault is barred by double jeopardy because aggravated assault with a deadly weapon is a lesser-included offense of attempted aggravated sexual assault, (2) the aggravated assault with a deadly weapon is barred by double jeopardy because it is a lesser-included offense of attempted aggravated sexual assault, and (3) appellant was deprived of counsel at a critical stage of proceedings, the 30–day window for filing a motion for new trial. We conclude aggravated assault is not a lesser-included offense of attempted aggravated sexual assault as alleged in the indictment, and that appellant was not deprived of counsel during the 30–day window for filing a motion for new trial. We, therefore, affirm.

## Background

While at work at her insurance office, Goldsmith took a restroom break. When she exited her stall, she encountered appellant wearing a mask made of stockings with an eye cut out. Appellant flashed a six to eight inch knife, pinned Goldsmith to the wall, and after a brief struggle, placed the knife near her throat. Goldsmith hyperventilated and appellant backed off her telling her not to scream. Goldsmith then pushed appellant. Angered by her resistance, he pressed the knife against her throat. Goldsmith pushed again, causing appellant to drop his knife. To regain control of Goldsmith, appellant tried to

pull her back into the stall. In the process, he pulled off her blouse.

In response to Goldsmith's screams, a male co-worker entered the restroom and asked if everything was ok. Goldsmith responded, "No, there's a rapist, call 911!" Appellant attempted to pick up the knife again, but Goldsmith escaped his grasp and exited the restroom. She returned to her office cut in several places, clothed only in her bra and pants.

William Graper, the male co-worker who answered Goldsmith's calls for help, ran to get additional help from other co-workers when he saw appellant and Goldsmith struggling in the bathroom. Graper and other co-workers managed to seize appellant for the police. After arresting appellant, the police found several items in his possession: a leash, a roll of electrical tape, a roll of duct tape, a stocking, and an item that appeared to be a gag.

Appellant was indicted for aggravated assault and attempted aggravated sexual assault. Without any objections to the indictments, appellant pleaded guilty to both offenses. In the sentencing phase of the trial, the State presented the testimony of Goldsmith, Graper, and other co-workers, as well as witnesses involved in the subsequent investigation. Appellant presented the testimony of his brother and a close life-long friend.

Nineteen days after the judgment was rendered, appellant filed a timely pro se notice of appeal and a pro se request for an attorney. No motion for new trial was filed. After appellant filed the pro se appeal, the District Clerk listed appellant as a pro se appellate litigant and sent correspondence directly to appellant.

To address whether appellant wished to proceed pro se, we abated the case to the trial court for the trial court's certification of appellant's right to appeal and a deter-

mination of whether appellant should be appointed appellate counsel. On remand, the trial court stated,

[D]efendant was appointed an attorney at the outset of this case as he was determined to be indigent. Such finding of indigence has not changed. Such attorney is Philip Parker.... In accordance with the provisions of Fort Bend County Local Rules "an attorney who is appointed to represent an indigent defendant, regardless of the degree of offense, is expected to represent that defendant through all pretrial, post trial and appellate levels." As such Philip Parker is and remains the defendant's attorney.

Appellant later retained new appellate counsel, Bob Wicoff, and Parker withdrew as counsel. Appellant's new counsel filed a motion in this court, requesting that we order the 30–day window of time for filing a motion for new trial to begin anew. In his motion, Wicoff stated that appellant desired to pursue a motion for new trial, but did not have the assistance of counsel during the time the motion could have been filed. Based on this motion, we abated the appeal for the second time on December 19, 2005. Following former precedent, as outlined in *Jack v. State*, 42 S.W.3d 291, 292 (Tex.App.-Houston [1st Dist.] 2001, order), we abated the appeal and remanded the case to the trial court for a hearing to determine whether appellant was represented by counsel and whether he received effective assistance of counsel during the 30–day window for filing a motion for new trial.

Parker testified at the abatement hearing that he advised appellant of his right to file a motion for new trial and appeal, and that appellant said he would get back in touch with Parker if appellant decided to pursue those options. Parker said appellant never contacted him to file either a

motion for new trial or an appeal. Parker testified that he remained as appellant's counsel during the 30–day window for filing a motion for new trial. The trial court found that trial counsel had represented appellant during the 30–day window for filing a motion for new trial. After the hearing pursuant to the second abatement, we reinstated the appeals.

## Double Jeopardy

In his second and third issues, appellant contends the aggravated assault judgment and the attempted aggravated sexual assault judgment are barred by double jeopardy because aggravated assault is a lesser-included offense of attempted aggravated sexual assault.

### A. Applicable Law

■ The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, protects an accused against a second prosecution for the same offense for which he has been previously acquitted or previously convicted. *Littrell v. State,* 271 S.W.3d 273, 275 (Tex.Crim.App.2008) (citing *Brown v. Ohio,* 432 U.S. 161, 164, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)). It further protects an accused from being punished more than once for the same offense. *Id.*

■ Appellant's case involves the issue of multiple punishments stemming from a single prosecution. In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that one punishment is intended. *Id.* at 276 (citing *Bigon v. State,* 252 S.W.3d 360, 370 (Tex.Crim.App.2008); *Langs v. State,* 183 S.W.3d 680, 685 (Tex. Crim.App.2006)).

What is considered the same offense in the multiple-punishments context is a matter of legislative intent. *Littrell,* 271 S.W.3d at 276 (citing *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983)). The traditional indicator of that legislative intent is the so-called "same elements" test of *Blockburger v. United States. Id.* (citing *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). Under the *Blockburger* test, the court should presume that the Legislature did not regard two statutorily defined offenses to be the same if "each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. Although *Blockburger* provides the definitive test, the test is not exclusive, and an accused may be punished for two offenses that would be regarded as the same under a *Blockburger* analysis if the Legislature has made this intention clear. *Littrell,* 271 S.W.3d at 276.

■ In determining whether an offense is a lesser-included offense of another offense, the court begins "by comparing the elements of the greater offense, as the State pled it in the indictment, with the elements of the statute that defines the lesser offense." *Id.* (citing *Hall v. State,* 225 S.W.3d 524, 525 (Tex.Crim.App.2007)); *Bigon v. State,* 252 S.W.3d 360, 370 (Tex. Crim.App.2008). When the greater offense may be committed in more than one manner, the manner alleged determines whether the other offense alleged is a lesser-included offense. *Hall,* 225 S.W.3d at 531.

An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) It differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) It consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. ANN art. 37.09 (Vernon 2006); *Aguilar v. State*, 263 S.W.3d 430, 435 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd).

### B. Elements of the Offenses

The indictment for attempted aggravated sexual assault states,

[T]he Defendant, heretofore on or about November 25, 2003, did then and there intentionally, with the specific intent to commit the offense of aggravated sexual assault, do an act, to-wit: threatened Tammy Goldsmith with a knife and grabbed Tammy Goldsmith's clothing, which amounted to more than mere preparation that tended to but failed to effect the commission of the offense intended.

■ The indictment pleaded appellant acted with intent to commit aggravated sexual assault without specifying the manner and means. Under the Texas Penal Code, a person commits the offense of aggravated sexual assault by intentionally or knowingly causing penetration of the anus, sexual organ, or mouth of another person by any means without that person's consent, and by "us[ing] or exhibit[ing] a deadly weapon in the course of the same criminal episode," or by committing one of the other aggravating factors listed in 22.021(a)(2)(A). *See* TEX. PENAL CODE ANN.

§§ 22.021(a)(1)(A), (a)(2)(A)(iv) (Vernon Supp.2008).

A person commits *attempted* aggravated sexual assault if the person's acts "amount[ed] to more than mere preparation that tend[ed] to but fail[ed] to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01. For the *attempted* aggravated sexual assault as alleged, the State had to show that:

- appellant threatened Goldsmith with a knife or grabbed Goldsmith's clothing in an attempt to commit aggravated sexual assault; and
- appellant acted with the specific intent to sexually assault Goldsmith by using or exhibiting a deadly weapon or by committing one of the other aggravating factors listed in section 22.021.

*See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(A), (a)(2)(A)(iv)

The aggravated assault as pleaded required the State to prove additional elements not found in the indictment for attempted aggravated sexual assault. The indictment for aggravated assault states,

[T]he Defendant, heretofore on or about November 25, 2003, did then and there intentionally and knowingly threaten Tammy Goldsmith with imminent bodily injury and did then and there use and exhibit a deadly weapon, to-wit: a knife, during the commission of said assault[.]

*See* TEX. PENAL CODE ANN. § 22.01(a)(1)(Vernon Supp. 2008), § 22.02; *Burke v. State*, 28 S.W.3d 545, 548 (Tex. Crim.App.2000) (person commits aggravated assault by causing serious bodily injury to another, or by threatening imminent bodily injury or causing bodily injury and using or exhibiting deadly weapon during commission of assault).

■ Although the underlying evidence to prove the two offenses is similar, that is

not the pertinent inquiry. Determining whether an offense is a lesser-included offense of the alleged offense is a question of law that does not depend on the evidence to be produced at trial but, rather, depends on the elements in the charging instruments. *Hall*, 225 S.W.3d at 535.

For aggravated assault, the State must show appellant threatened imminent bodily injury with a deadly weapon, as compared to the attempted aggravated sexual assault that requires a lesser burden of using or exhibiting a deadly weapon in the course of the same criminal episode. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A), (a)(2)(A)(iv). Because the elements required to prove aggravated assault as alleged are not the same as, or less than, the elements required to prove attempted aggravated sexual assault, aggravated assault is not a lesser-included offense of attempted aggravated sexual assault under the pleadings in this case. *See, e.g., Ramos v. State*, 981 S.W.2d 700, 701 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd) (holding assault not lesser-included offense of aggravated sexual assault because aggravated sexual assault does not require proof that actor knew or should have known that contact would be offensive).

We overrule appellant's second and third issues for both appeals.

## Representation of Counsel During Window for Filing Motion for New Trial

In his first issue, appellant contends he was deprived of counsel during the 30–day window of time for filing a motion for new trial because the record shows (1) appellant filed a pro se notice of appeal, and (2) the Fort Bend District Clerk only sent notifications to appellant after appellant filed the pro se notice of appeal. Appellant requests abatement with remand of the cause to the trial court with instruc-tions that appellant be permitted to file a motion for new trial.

### A.  Law Concerning Motion for New Trial

■ A defendant has a right to file a motion for new trial, but must do so no later than 30 days after sentence is imposed. *See* TEX.R.APP. P. 21.4(a). Texas courts of appeals have held the period for filing a motion for new trial is a critical stage at which a defendant is entitled to counsel. *Benson v. State*, 224 S.W.3d 485, 490–91 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (en banc). When a defendant is deprived of effective counsel during the period for filing a motion for new trial, the remedy is to reset the appellate time limits. *Id.* at 491 (citing *Ward v. State*, 740 S.W.2d 794, 800 (Tex.Crim.App.1987) (en banc)).

### B.  Trial Counsel Continues Representation After Judgment Rendered

■ "[A]ppointed trial counsel remains as the defendant's counsel for all purposes until he is expressly permitted to withdraw, even if the appointment was for the trial only." *Ward*, 740 S.W.2d at 798. "[I]t is abundantly clear that an appointed attorney's legal responsibilities do not magically and automatically terminate at the conclusion of the trial.... The continuity of representation from trial to appeal is necessary to correct the ambiguity of representation which all too often follows a conviction." *Id.* at 796–97. Trial counsel, retained or appointed, has the duty, obligation, and responsibility to consult with and fully advise his client concerning the meaning and effect of the judgment rendered by the court, his rights of appeal, and the necessity of properly following procedural steps regarding appeal. *Benson*, 224 S.W.3d at 491 (citing *Ex parte Axel*, 757 S.W.2d 369, 374 (Tex.Crim.App. 1988) (en banc)).

Our appellate review, therefore, begins with the presumption that trial counsel continued to effectively represent appellant during the window for filing a motion for new trial. *Id.* Furthermore, we presume the reason a motion for new trial was not filed was because appellant considered filing it but opted not to file it. *Oldham v. State,* 977 S.W.2d 354, 363 (Tex. Crim.App.1998) ("When a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected.").

The burden to produce evidence to rebut the presumption falls on the appellant. *See id.* If an appellant rebuts the presumption by showing that he was not adequately represented during the period for filing a motion for new trial, then the remedy is to abate the proceedings and restart the appellate timetable. *See Ward,* 740 S.W.2d at 800.

### C. Analysis

At the evidentiary hearing, Parker testified he followed the Fort Bend County Local Rules, which provide that appointed counsel represent defendants through all pretrial, post trial, and appellate levels until counsel is expressly permitted to withdraw, even if the appointment was for the trial only. Parker also testified that "[he] advised [appellant] of his rights to file a [m]otion for [n]ew [t]rial," that he advised appellant "of his right to file a notice of appeal," and that appellant "told [Parker] that he would get back with [Parker] and let [Parker] know what he wanted to do." Parker also testified that this discussion "occurred at the end of the punishment hearing." Appellant told Parker that he "didn't know at that time" what he wanted to do. Parker explained that if appellant "had said, yes, I do want to file it ... [Parker] would have immediately [contacted] the Court coordinator because [he could] immediately file at that point in time."

After Parker's testimony, the trial court found appellant was represented by trial counsel in the 30–day window after the judgment was rendered. Specifically, the trial court made the following rulings:

> The Court will take judicial notice of the rules ... that says that a trial lawyer will stay on the case as the appellate lawyer until such time as he either moves to withdraw and a substitution is entered or he continues the appeal. So on its face [Parker] remained the attorney of record throughout.... The testimony we have before us today is Mr. Parker advised him on the day of the judgment being returned or the sentence being returned that he had a right to file a Motion For New Trial or appeal, but the contrary of Mr. Roger's testimony is that he cannot recall.... The evidence is clear he was advised and as such he had the right to make that decision, and his decision was to file a notice of appeal. So, under the plain reading of the law, he has waived his right for a Motion For New Trial, and that is my finding.

The record supports the trial court's determination that trial counsel did not abandon appellant. First, although appellant accurately notes that Parker was not sent notifications by the Fort Bend County District Clerk, the reason the clerk only sent notices to appellant was because appellant filed a pro se notice of appeal, and not because it was any comment on whether Parker continued to represent appellant. Second, appellant's filing of the appeal is not evidence he was abandoned, because an appellant filing of a pro se notice of appeal is evidence that the appellant was informed of at least some of his appellate rights. *See Oldham,* 977 S.W.2d at 363. Third, the record shows appellant's attorney notified appellant of his right to file a motion for new trial immediately after sentencing. The record also shows appellant told his attorney that he

would "get back" to the attorney when he made a decision. Instead of returning to his attorney to discuss the matter, appellant chose to move forward and file a pro se notice of appeal without notifying his attorney. Fourth, the record shows that as soon as appellant's attorney discovered that appellant filed a pro se notice of appeal, he went and discussed the issue with appellant.

Appellant has not shown that his attorney failed to fully advise appellant about the "meaning and effect of the judgment rendered by the court." *See Ex parte Axel,* 757 S.W.2d at 374. Appellant has not shown that trial counsel failed to advise him of the right to file a motion for new trial or an appeal, that his attorney refused to file a motion, or that appellant requested a motion for new trial. *See generally Burnett v. State,* 959 S.W.2d 652, 659 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). In short, appellant has not shown this court that his attorney failed as counsel during the 30–day window. *See Benson,* 224 S.W.3d at 497.

We cannot conclude that appellant has sufficiently rebutted the presumption that trial counsel continued to represent him effectively. *See id.* We hold the record shows appellant was represented by counsel at all times in the litigation, and the record supports the presumption that counsel was acting effectively at all times. *See Smith v. State,* 17 S.W.3d 660, 662–63 (Tex.Crim.App.2000); *Benson,* 224 S.W.3d at 498.

We overrule appellant's first issue for both appeals.

### Conclusion

We affirm the two trial court convictions.